UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTY ALLEN MULLINS,<br><br>    Petitioner,<br><br>    v.<br><br>FOULK,<br><br>    Respondent. | Case No. 14-cv-00858-JD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Petitioner filed a traverse. The petition is denied.

**BACKGROUND**

In October 2011, Mullins pled no contest in Sonoma County Superior Court to four counts of burglary, four counts of receiving stolen property, one count of attempted burglary, and one count of receiving a stolen vehicle. Clerk's Transcript ("CT") at 1050-51. Mullins admitted that he was out on bail at the time he committed some of the offenses and that he had one prior felony strike. *Id.* He was sentenced to 31 years in state prison. Reporter's Transcript ("RT") at 1093-95. Mullins appealed his sentence but abandoned his appeal and requested a dismissal, which was granted by the California Court of Appeal. Answer, Ex. 5. He later filed state habeas petitions to the California Court of Appeal and California Supreme Court, both of which were denied. Answer, Exs. 6, 7.

The following summary of the facts underlying the convictions is taken from the probation report ("Report," Docket No. 14):

On September 19, 2009, victim Selma Sklar reported that she came home to find her home ransacked and determined that her purse, including wallet and credit cards, all her jewelry, a camera, binoculars and some silverware were missing. Fingerprints taken from the front door were determined to belong to Mullins. Report at 2-3.

On October 8, 2009, petitioner was arrested during a traffic stop. Inside the vehicle he was driving, police found items that had been taken during an automobile burglary earlier that day, plus a spring-loaded window punch. Petitioner admitted the tool was his, but stated that his female passenger brought the other items into the car. The passenger denied knowledge of the items. *Id*. at 3.

On August 29, 2010, victim Lauren Couture was home watching TV when her doorbell rang. She did not answer the door but observed two males outside, one wearing a red t-shirt and the other wearing a black t-shirt. When she did not answer the door, the men appeared to walk away. A short time later, Couture heard noises from the front of the house and she observed the man wearing the red t-shirt, later identified as petitioner's co-defendant, taking the screen off the window. When the man saw Couture, he fled. Couture's brother arrived a short time later, pursued the suspects and obtained a license plate number. Mullins was later identified to be the man in the black t-shirt. *Id*. at 4-5.

On September 3, 2010, deputies responded to a burglary alarm at the residence of Carol Ferrari and Michael Tuck. The residence had previously been burglarized on August 11, 2010. One of the deputies saw a Toyota 4Runner heading towards him and he pursued it. The vehicle eventually stopped and the suspects inside fled. Mullins was tackled by the deputy and subsequently arrested. *Id*. at 5.

The Toyota 4Runner had been reported stolen two days earlier, on September 1, 2010. The Toyota's owners, Christie and Heidi Young of Novato, had recently been the victims of a residential burglary during which firearms, and jewelry, including a necklace, purses, a gold clock, a gold coin had been stolen. A search of the Toyota 4Runner revealed three garage door openers, including one that had been taken during the August 11, 2010 burglary of the Tuck/Ferrari residence. *Id*. at 6.

2

During a phone call from jail, Mullins asked his girlfriend to go get another coin collection, sell the coins, and bail him out. On September 10, 2010, an officer obtained the coins from petitioner's girlfriend and determined that the coin collection had been taken during the Young burglary. *Id*. at 7-8.

On February 8, 2011, Mullins was identified by members of the Deaton family as having been caught inside their house with a black bag under his arm. *Id*. at 8.

Later on February 8, 2011, Sharlien Hinton noticed that someone had entered her home and taken items, including credit cards, jewelry and personal papers. Mullins was arrested in the neighborhood shortly afterwards. He admitted participating in the Deaton and Hinton burglaries. *Id*. at 9-10.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that

3

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 981–82 (9th Cir. 2000). When confronted with such a decision, as with all the claims in this petition, a federal court should conduct an independent review of the record to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Himes*, 336 F.3d at 853; *Delgado*, 223 F.3d at 982.

## DISCUSSION

As grounds for federal habeas relief, Mullins asserts that: (1) he received ineffective assistance of counsel; (2) his guilty plea was not knowing and voluntary; (3) there was a violation of *Brady v. Maryland,* 373 U.S. 83 (1963); and (4) there were sentencing errors.

4

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Mullins argues that trial counsel was ineffective for: (1) failing to investigate and speak to witnesses who could have testified at the preliminary hearing; (2) failing to make a successful argument at the preliminary hearing to allow impeachment evidence to be heard; (3) failing to file a motion to dismiss; (4) failing to pursue discoverable information from the prosecutor; (5) advising Mullins to waive a preliminary hearing on two counts; (6) failing to pursue a psychiatric defense; (7) improperly advising Mullins to plead no contest; (8) not pointing out errors during sentencing; and (9) not including certain claims on appeal.

**Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. *Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (holding that guilty plea forecloses consideration of pre-plea constitutional deprivations); *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973) (same). Claims that defense counsel failed to investigate and develop a defense are precluded by a guilty plea under *Tollett*. *Fairbank v. Ayers*, 650 F.3d 1243, 1254-55 (9th Cir. 2011). Under this authority, therefore, a petitioner's claims that prior to his no contest plea defense counsel did not

adequately investigate and develop defenses are precluded by his plea. *See Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (plea foreclosed claim that prior to plea defense counsel failed to prevent admission of his confession) (superseded on other grounds). The only challenges left open for federal habeas corpus review after a defendant's guilty plea are the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

**Discussion**

Mullins' first six claims of ineffective assistance of counsel are not cognizable on federal habeas review because of his plea of no contest.[1] But even if considered, he has failed to show that counsel was deficient or that he was prejudiced. Mullins offers only conclusory allegations and fails to describe what evidence trial counsel could have discovered and how it would have benefited his case. These barebones allegations are insufficient to warrant habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Nor is Mullins entitled to relief on his claim regarding sentencing. The Supreme Court has not decided what standard should apply to counsel's performance in non-capital sentencing proceedings. *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005). *Strickland* declined to "'consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance,'" and no later Supreme Court decision has done so, either. *Id*. (omission in original) (quoting *Strickland* at 686). Consequently, there is no clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the noncapital sentencing context. *See Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006); *Cooper-Smith*, 397 F.3d at 1244-45. Mullins also alleges that counsel was ineffective for failing to raise the *Brady* claim presented in this petition on appeal. As discussed below, the *Brady* claim is meritless; therefore, counsel was not ineffective for failing to raise it.

---

[1] Under California law, a "plea of nolo contendere 'is the functional equivalent of a guilty plea.'" *United States v. Anderson*, 625 F.3d 1219, 1220 (9th Cir. 2010) (quoting *People v. Whitfield*, 54 Cal. Rptr. 2d 370, 377 (Cal. Ct. App. 1996)).

6

1   Mullin's claim that trial counsel improperly advised him to plead no contest is appropriate

2   for federal habeas review.  Mullins argues that counsel advised him to plead guilty in order to be

3   sentenced to a drug and alcohol program instead of a lengthy sentence.  Mullins also states that at

4   the time he entered his open plea there was still a plea offer for 18 years from the prosecutor.

5   The following occurred at Mullins' change of plea hearing where he was present with trial

6   counsel:

> [TRIAL COUNSEL]:  Your honor, Mr. Mullins wishes the Court and People to know that he would enter this plea.  He does not wish the victims to have to go to trial on this.
>
> [MULLINS]:  Thank you.  I apologize for the Court's time to this point.
>
> THE COURT:  Well, let's have you look at this document first.  Let say, I see that the agreement is for what?  There's nothing on here.
>
> [TRAL COUNSEL]:  There is no agreement, Your Honor.  Mr. Mullins is pleading open.  He is throwing himself at the mercy of the Court.
>
> . . .
>
> THE COURT:  So I will just note on the Tahl waiver that this is an open plea.
>
> [TRIAL COUNSEL]:  I believe that's reflected –I think it's exactly where the Court's at on the Tahl waiver, two or three lines up, should be initialed by Mr. Mullins.
>
> THE COURT:  Okay.  The initials are a little difficult to read.
>
> [MULLINS]:  My apologies.  I don't have my glasses.
>
> THE COURT:  No worries.  I'm just clarifying.  So basically, it looks like you're going to plead to at least 10 counts, admit a bunch of things, and that you're going to leave it to my discretion sentence you appropriately.  Right?
>
> [MULLINS]:  Yes, Your Honor.
>
> THE COURT:  So did you fill out the four-page document –this is a Tahl waiver –that I'm holding up in front of you?
>
> [MULLINS]:  Yes, I did, Your Honor.
>
> THE COURT:  Did you place your initials in the left column of each of these four pages.
>
> [MULLINS]:  I did, Your Honor.

7

>THE COURT: Did you place your signature at the top of page four?
>
>[MULLINS]: I did, Your Honor.
>
>THE COURT: Did you have enough time to talk to your lawyer about the rights you have, the rights you're giving up, and the legal consequence of the plea?
>
>[MULLINS]: I did, Your Honor.
>
>THE COURT: Are you entering into this agreement freely and voluntarily?
>
>[MULLINS]: I am, Your Honor.
>
>. . .
>
>THE COURT: So do you understand that the maximum exposure for the offenses that you're pleading guilty is a determinate state prison term of up to 47 years?
>
>[MULLINS]: Yes, Your Honor.
>
>. . .
>
>THE COURT: Do you understand that the presumption is mandatory prison for these offenses?
>
>[MULLINS]: Yes, Your Honor.
>
>THE COURT: Do you understand that, because these are strike offenses that you're pleading to, and you're admitting prior strike offenses, that you're going to be serving time with reduced conduct credits?
>
>[MULLINS]: Yes, Your Honor.

RT at 1064-66.

Mullins later stated, "I understand what I'm giving up. I understand that I'm giving up my right to trial, my legal rights. I just, I'm throwing myself at the mercy of the Court at this point. I plead no contest to all the charges." RT at 1068. Mullins also signed and initialed the waiver of his constitutional rights for the open plea. CT at 1051-54.

The plea hearing transcript and the signed plea form contradict Mullins' contention that he would be avoiding a lengthy sentence and be eligible for a drug and alcohol program by entering a plea of no contest. The trial court was clear that he faced a sentence of up to 47 years and that there was a presumption of mandatory prison time. Mullins stated that he understood and threw himself on the mercy of the court, ultimately receiving a sentence of 31 years. His statements now

8

asserting that he had believed he would be sentenced to a drug and alcohol program are inconsistent with the plea hearing and plea form, which show the trial had clearly explained to him that there would be a prison term. Mullins also admitted at the hearing that he had a prior strike conviction for first degree burglary and that he was out on bail when he committed these crimes. RT at 1070-71.

Mullins argues that the prosecutor offered him a plea deal for 18 years, but during discussions his trial counsel stated, "[t]hen plea no contest to all charges now at this time and in front of this Judge because it's the only way you will get a drug and alcohol program in [lieu] of a lengthy sentence!" Petition at 125. Mullins states that by pleading no contest he was sentenced to 31 years and that he should have taken the 18-year offer. Mullins presents no evidence to support his assertion that the prosecutor offered a plea deal for 18 years. He states he signed an acknowledgement of the 18-year offer, but he has not presented it with the petition. Nor has Mullins presented any affidavit or statement from trial counsel.

Mullins cites nothing in the record supporting his allegation that the prosecutor ever offered him a plea bargain or that trial counsel advised him to reject such an offer if it had been made, and Mullins' own self-serving statements are insufficient to establish his allegations. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance of counsel claim when "[o]ther than Womack's own self-serving statement, there is no evidence" to support the claim); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("'[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.'" (alteration in original)).

Therefore, the California Supreme Court's rejection of Mullins' ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. *See Gentry v. Sinclair*, 705 F.3d 884, 900 (9th Cir. 2013) ("Because 'counsel is strongly presumed to have rendered adequate assistance,'" it was not unreasonable for state court to reject petitioner's ineffective assistance of counsel claim when petitioner provided no evidence to support the claim (quoting *Strickland*, 466 U.S. at 690)); *Sandgathe v. Maass*, 314 F.3d 371, 379 (9th Cir. 2002) (affirming denial of

9

1    ineffective assistance of counsel claim when petitioner presented no evidence in support of claim);

2    *United States v. Ross*, 584 F. App'x 502, 503-04 (9th Cir. 2014) (Ross' claim that defense counsel

3    rendered ineffective assistance in advising him to reject a pretrial plea agreement "fails because

4    there is no evidence in the record that Ross would have considered or accepted any pretrial plea.").

5          Even assuming that such an offer was made by the prosecutor and that trial counsel made

6    the statements attributed to him, Mullins has still not demonstrated that the denial of this claim

7    was an unreasonable application of Supreme Court authority or an unreasonable determination of

8    the facts.  According to Mullins' statements in the petition, trial counsel told him that he was

9    going to receive a lengthy prison sentence and that his only chance of receiving a drug and alcohol

10   program was to throw himself on the mercy of the court. Petition at 125.  Mullins alleges that trial

11   counsel told him that the particular judge hearing his case would be his only hope to receive a drug

12   and alcohol program. Petition at 13.  Based on these statements, trial counsel conveyed the offer

13   from the prosecution and discussed with Mullins his options.  Trial counsel did not guarantee that

14   Mullins would receive a drug and alcohol program with the particular trial judge; rather, he

15   conveyed it as a chance to avoid a lengthy sentence.  Based on the overwhelming evidence against

16   Mullins and his criminal history, Mullins has not shown that trial counsel's statement was

17   deficient performance.

18         A defendant has the right to make a reasonably informed decision whether to accept a plea

19   offer, and trial counsel must give the defendant sufficient information regarding a plea offer to

20   make an intelligent decision. *See Turner*, at 880-81.  Mullins has not established that counsel's

21   advice was deficient, meaning the advice was "'within the range of competence demanded of

22   attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759,

23   771 (1970)).  Erroneous advice regarding the consequences of a guilty plea is insufficient to

24   establish ineffective assistance; petitioner must establish a "'gross mischaracterization of the likely

25   outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going

26   to trial.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (omission in original)

27   (citing *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990)).  Mullins' trial counsel

28   provided him with the relevant information regarding the plea offer and consequences for

1  proceeding to trial, and Mullins chose to throw himself on the mercy of the court. Trial counsel
2  was not ineffective in presenting all this information, and this claim is denied.[2]

## II. GUILTY PLEA

Mullins next argues that he did not knowingly and voluntarily plead guilty because he was not mentally competent, he was not wearing his prescription glasses, trial counsel was ineffective, and there were mistakes at sentencing.

### Legal Standard

A defendant who pleads guilty may not collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of competent counsel. *United States v. Broce*, 488 U.S. 563, 574 (1989). Nor may he collaterally attack his plea's validity merely because he made what turned out, in retrospect, to be a poor deal. *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Due process requires that a guilty plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). It does not, however, require a state court to enumerate all the rights a defendant waives when he enters a guilty plea as long as the record indicates that the plea was entered voluntarily and understandingly. *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986); *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974).

The competency standard to plead guilty is the same as that to stand trial. *Doe v. Woodford*, 508 F.3d 563, 571 (9th Cir. 2007) (finding insufficient evidence of mental illness to establish defendant's incompetence). A petitioner was competent to plead guilty and stand trial if he had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him.

---

[2] Nor has Mullins demonstrated prejudice that even if he had accepted the plea offer that the trial court would have accepted it in light of the crimes and criminal history.

*Godinez v. Moran*, 509 U.S. 389, 396-98 (1993); *Deere v. Cullen*, 718 F.3d 1124, 1146-47 (9th Cir. 2013).

**Discussion**

The Court has already summarized the change of plea hearing and the exchange between Mullins and the trial court. Mullins now argues that he was not mentally competent at the change of plea hearing in October 2011. He relies on several exhibits that demonstrate how shortly after the guilty plea Mullins was diagnosed as being on the "bipolar spectrum." Petition, Ex. K. The same mental health report also described Mullins as only somewhat depressed, alert, and cooperative with good eye contact and clear speech. *Id*. The follow-up mental health appointments also reflect that Mullins was alert and cooperative and, other than being treated for depression, there were no indications that he was incompetent. *Id*. He was prescribed Depakote and reported that he was feeling better and was no longer depressed in December 2011. Petition at 84. Shortly after Mullins was sentenced on February 9, 2012, he was reported to be "alert, clear, talkative, seems pretty calm . . . coping pretty well." *Id*.

Mullins' conclusory allegations that he was incompetent do not warrant habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Nor does a review of the transcripts of the plea hearing or his exhibits indicate that he was not competent. He has failed to demonstrate that he lacked the ability to consult with his lawyer with a reasonable degree of rational understanding or that he lacked a rational as well as factual understanding of the proceedings against him. He has failed to demonstrate that the state court's denial of this claim was an unreasonable application of Supreme Court authority. This claim is denied.

Mullins' remaining contentions are also meritless. His argument that there were errors in his sentencing is not relevant to whether his plea was knowing and voluntary. His argument that trial counsel was ineffective was discussed in the previous section. His argument that he was not wearing his prescription eyeglasses is also void of merit. At the change of plea hearing Mullins stated on the record that he understood the consequences of his plea and that he could be sentenced for up to 47 years and that he was facing a mandatory prison sentence. He also stated that he had signed and initialed the plea form. Mullins has not shown that he is entitled to relief.

## III. BRADY CLAIM

Mullins argues that there was a *Brady* violation because the prosecutor failed to produce evidence that a detective who testified at the preliminary hearing allegedly had an affair with Mullins' ex-wife.

**Legal Standard**

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed [to the defense], the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine [] confidence in the outcome of the trial.'" *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (alteration in original) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). "[E]vidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith*, 132 S. Ct. at 630-31 (finding impeachment evidence of prosecution's sole witness material); *accord Agurs*, 427 U.S. at 112-13 & n.21. And the mere possibility that undisclosed information might have been helpful to the defense or might have affected the outcome of the trial does not establish materiality under *Brady*. *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir. 2013).

In sum, for a *Brady* claim to succeed, petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued). *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v.*

*Greene*, 527 U.S. 263, 281-82 (1999). *Cf. Towery v. Schriro*, 641 F.3d 300, 309-10 (9th Cir. 2010) (no habeas relief on *Brady* claim under § 2254 where state court reasonably determined "beyond a reasonable doubt that the prosecutor's misconduct did not affect the verdict").

**Discussion**

At the preliminary hearing, Mullins' trial counsel cross-examined a detective about a possible relationship with someone Mullins knew. RT at 559. The prosecutor objected and trial counsel indicated that he had a witness who could testify that the detective had had an affair with Mullins' ex-wife and that the detective had shown aggression towards Mullins. RT at 559-63. The trial court refused to allow the questions but told trial counsel that if a competent witness was produced, the court would consider the questions at a later date. RT at 561. Trial counsel also requested a protective order to limit the prosecutor from discovering the offer of proof. RT at 562. The prosecutor responded that a protective order would make it difficult to identify potential *Brady* information. *Id.* Mullins cites to this exchange as the basis for his *Brady* claim.

Mullins points to no specific evidence that was suppressed by the prosecutor either willfully or inadvertently. In addition, trial counsel knew of the possible connection between the detective and Mullins. Where the defendant is aware of the facts, the prosecutor does not commit a *Brady* violation. *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006). Since Mullins pled guilty to the charges so there was no opportunity for the prosecutor to further investigate the claim.[3] Mullins has failed to show that state court denial of this claim was an unreasonable application of Supreme Court authority. The claim is denied.

**IV.    SENTENCING**

Mullins argues that the trial court illegally sentenced him by imposing consecutive rather than concurrent terms and by using his prior strike as an enhancement.

---

[3] The Ninth Circuit has held that, notwithstanding *Tollett's* bar on independent claims of constitutional violations preceding a guilty plea, a defendant can argue that his guilty plea was not voluntary and intelligent because it was made in the absence of withheld *Brady* material. *Sanchez v. U.S.*, 50 F.3d 1448, 1453 (9th Cir. 1995). As discussed above, Mullins was aware of the impeachment evidence, therefore it did not constitute *Brady* material.

**Discussion**

State sentencing courts must be accorded wide latitude in their decisions as to punishment. *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987). Generally, therefore, a federal court may not review a state sentence that is within statutory limits. *See id*. To the extent that Mullins argues that state law was incorrectly applied, any such claim is denied. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993) (federal habeas courts must defer to state courts' interpretations of their own state laws, including state sentencing laws). This Court must defer to the state court's interpretation of its own sentencing law.

Even if considered, Mullins is not entitled to relief. He provides no specific arguments why his terms should have been concurrent, and a review of the transcripts and relevant state law does not show any error. He also states that his sentence was doubled for a prior strike in addition to receiving an additional five-year enhancement for committing the prior strike pursuant to Cal. Penal Code § 667(a)(1). Petition at 24. California law specifically authorizes Mullins' punishment under the Three Strikes law and section 667(a)(1). *People v. Acosta*, 29 Cal. 4th 105, 131 (2002) ("[U]sing one of [defendant's] prior convictions first as a strike . . . and then under section 667, subdivision (a), to impose a five-year enhancement, conforms to the language of the Three Strikes law. . . ."). This claim is denied.

**V.    CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id*. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

15

1 is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district
2 court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.
3 473, 484 (2000).

4 Here, petitioner has made no showing warranting a certificate and so none is granted.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED.**

Dated: October 13, 2015

_____
JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONTY ALLEN MULLINS,

    Plaintiff,

    v.

FOULK,

    Defendant.

Case No. 14-cv-00858-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 13, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Monty Allen Mullins ID: AL 1169
Pleasant Valley State Prison
P.O. Box 8500
Coalinga, CA 93210

Dated: October 13, 2015

Susan Y. Soong
Clerk, United States District Court

By: /s/ Lisa R. Clark
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO